UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARIE ALCY,

                            Plaintiff,

           - against -

NORTHWELL HEALTH, INC. and MARY ANNE
PORTORO, *Individually*,

                            Defendants.
-----------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

       Plaintiff MARIE ALCY (hereinafter "Plaintiff" or "Plaintiff ALCY") by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants NORTHWELL HEALTH, INC. (hereinafter "Defendant NORTHWELL") and MARY ANNE PORTORO (hereinafter "Defendant PORTORO") upon personal knowledge, as well as upon information and belief, by alleging and averring as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that Defendants have violated Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII") and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and seeks damages to redress the injuries she has suffered as a result of being discriminated against on the basis of her race (Black) and national origin (Haitian), as well as being terminated in retaliation for complaining about race and national origin discrimination.

1

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under 42 U.S.C. § 2000e, *et seq.*

3. Jurisdiction in this Court is also proper under 28 U.S.C. § 1332(a)(3) as the matter in controversy exceeds the value of $75,000 and is between citizens of different states.

4. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York and/or a substantial part of the events or omissions giving rise to the claim occurred therein.

## PROCEDURAL PREREQUISITES

6. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated December 13, 2022, with respect to the charges of discrimination contained herein. A copy of the Notice is annexed hereto as Exhibit A.

8. This Action is being commenced within ninety (90) days of said Notice.

## THE PARTIES

9. At all times relevant hereto, Plaintiff ALCY was and is a resident of the State of Connecticut and County of Litchfield.

10. At all times relevant hereto, Defendant NORTHWELL was and is an active domestic not-for-profit corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York.

11. At all times relevant hereto, Defendant NORTHWELL owns and operates Phelps Hospital Northwell Health (hereinafter "Phelps Hospital"), a hospital located at 701 N. Broadway, Sleepy Hollow, New York 10591.

12. At all times relevant hereto, Defendant PORTORO was and is an individual residing in the State of New York, as well as a Charge Nurse for Defendant Northwell. As such, she had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision-making regarding same.

13. Defendant NORTHWELL is subject to all statutes upon which Plaintiff is proceeding herein.

14. Defendant NORTHWELL and Defendant PORTORO will sometimes be collectively referred to herein as "Defendants."

## MATERIAL FACTS

15. In or around December 2018, Plaintiff ALCY, a Black woman of Haitian national origin, was hired by Defendant NORTHWELL as an Emergency Room ("ER") Technician at Phelps Hospital for the 11:00pm-7:30am shift.

16. Nearly immediately after starting to work for Defendant NORTHWELL, Plaintiff ALCY noticed that her coworkers began to treat her disrespectfully, and that she was forced to do more than her fair share of the available work because her coworkers were sleeping or hiding in other parts of the hospital.

17. For example, Scott Rose, Patient Transport, who is White; Leticia Campos, Registered Nurse, who is Hispanic; Lenora, ER Technician, who is Asian; and Defendant PORTORO, who is White, would all speak to Plaintiff ALCY aggressively and call her "lazy" each time they worked with her.

18. Defendant PORTORO, who, as Charge Nurse was the acting supervisor on the floor, would distribute tasks unevenly and assign Plaintiff ALCY more tasks than any other employee.

19. In or around fall of 2019, Plaintiff ALCY complained to Candace Huggins, Manager, and Alayna Davis, Assistant Director, about her coworkers' offensive behavior.

20. Plaintiff ALCY told Ms. Huggins and Ms. Davis that she was often the only employee doing work on the floor while Defendant PORTORO, Ms. Campos, Mr. Rose, and Lenora watched and ordered her around.

21. Plaintiff ALCY continued that she felt she was being treated differently because of her race and national origin, since she was the only Black, Haitian employee on the floor whenever she experienced this treatment, and the other employees, who were all of different races and national origins, only treated her in this way.

22. Ms. Davis and Ms. Huggins responded by exclaiming that the employees cited by Plaintiff ALCY would "never do that," but added that nevertheless that they would talk to the other employees and then follow up with Plaintiff.

23. However, Ms. Davis and Ms. Huggins did not follow up with Plaintiff ALCY after her complaint, and it seemed to Plaintiff that they had never spoken to the other employees about their treatment of Plaintiff because the same employees continued to subject her to mistreatment.

24. Plaintiff ALCY continued to feel singled out due to her race and national origin, as the only Black, Haitian employee present during her shift.

25. For example, Ms. Campos and Maria De La Cruz, Secretary, who was also Hispanic, would ignore Plaintiff ALCY, refuse to say hello to her, and began only speaking in Spanish around Plaintiff, so that she could not understand what they were saying.

26. On one occasion, Ms. Campos yelled across the emergency department for Plaintiff ALCY to take a new patient's vital sign measurements while Plaintiff was clearly occupied with assisting another patient.

27. When Plaintiff ALCY responded that she was in the middle of assisting a patient and could not assist Ms. Campos, but that there was another Technician, Lenora, sitting nearby who was not occupied, Ms. Campos yelled aggressively, "I am asking you, not her!"

28. Plaintiff ALCY's coworkers would frequently engage in similar behavior to Ms. Campos' behavior, by ordering Plaintiff to complete task after task while other coworkers sat idly by and preventing Plaintiff from getting adequate breaks because of the volume of work she was completing.

29. The charge nurses, Defendant PORTORO, Jose Azuprado, and Kyle Irisis, who were the on-site supervisors for each shift, contributed to the hostile work environment Plaintiff ALCY was experiencing by dividing tasks unequally and ensuring that Plaintiff was always given more to do than her non-Black coworkers.

30. The charge nurses would also discipline Plaintiff ALCY unevenly, and Defendant PORTORO especially would criticize Plaintiff for not responding immediately to her pager app, Vocera, though the app also had a location tracking function and Defendant PORTORO knew that Plaintiff was in the restroom when she did not respond immediately.

31. Upon information and belief, Defendant PORTORO did not discipline any other employee for their response speed on Vocera, especially not when they were in the restroom.

32. Led by Defendant PORTORO, the other employees ensured that Plaintiff ALCY was constantly working more than her coworkers to the point where Plaintiff was on her feet

for essentially the entirety of her shift, while other employees regularly sat and did not work.

33. Because of the stress caused by her coworkers' continuing hostile behavior, Plaintiff ALCY began to experience high blood pressure and required medical intervention.

34. Approximately once a month throughout 2020, Plaintiff ALCY continued to complain to Ms. Davis that she felt her coworkers, and the supervising charge nurses, continued to mistreat her in the same manner as she had complained about in 2019, and that her emotional distress was so severe that she had to receive medical treatment for high blood pressure.

35. Ms. Davis responded to Plaintiff ALCY's good faith complaints of continuing harassment by again exclaiming that she did not think the other employees could treat Plaintiff in the way Plaintiff had described, and then took no additional action on the complaints.

36. After Plaintiff ALCY's complaints in 2020 to Ms. Davis, the other employees' hostility became more severe, and it seemed to Plaintiff that Ms. Davis had told them that Plaintiff had complained about their treatment of her.

37. For example, on multiple occasions beginning in or around mid-2021, Defendant PORTORO told Plaintiff ALCY she was a "lazy Black girl that doesn't like to work."

38. Defendant PORTORO would make these outrageously racist statements in front of other employees, notably Ms. Campos and Mr. Rose, who did nothing to oppose Defendant PORTORO's comments.

39. Quana Alford, another Black ER Technician, also witnessed Defendant PORTORO call Plaintiff ALCY a "lazy Black girl" on more than one occasion and told Plaintiff that she was horrified by Defendant PORTORO's statements.

40. Notably, Defendant PORTORO was also hostile towards Ms. Alford.

41. Plaintiff ALCY and Ms. Alford would discuss that they believed that Defendant PORTORO's behavior was racist.

42. Ms. De La Cruz would also refer to Plaintiff ALCY as "lazy" to her face and say that Plaintiff "didn't like to work" regularly throughout 2021.

43. On one occasion, Mr. Rose yelled at Plaintiff ALCY, "Haitian girl your pussy stinks" at the nurse's station, where Defendant PORTORO was present and heard Mr. Rose's statement.

44. Defendant PORTORO did not acknowledge Mr. Rose's crude and inappropriate statement, even though Plaintiff ALCY expressed to Mr. Rose that she was disgusted by his comment, and continued working without interruption.

45. Also, throughout 2021 and 2022, Mr. Rose would state loudly, "here comes the Black lady" when he saw Plaintiff ALCY approaching him.

46. When Mr. Rose greeted Plaintiff ALCY in this manner, she would always respond, "can you please not say that to me?"

47. However, Mr. Rose ignored Plaintiff ALCY's objections and continued to say, "here comes the Black lady" on a regular and ongoing basis when he saw Plaintiff.

48. Ms. Campos and Defendant PORTORO both witnessed Mr. Rose refer to Plaintiff ALCY as "Black lady," and Plaintiff object to Mr. Rose's statement, on multiple occasions, but did not intervene.

49. Ms. Campos also continued to speak to Plaintiff ALCY in a harsh and unprofessional manner and would yell at Plaintiff in the presence of patients and other staff whenever they were scheduled for the same shift, which was ordinarily multiple times each week.

50. As Plaintiff ALCY's treatment at work worsened throughout 2021, her health continued to decline and she continued to receive medical treatment for high blood pressure and anxiety.

51. Because of this, in or around 2021, Plaintiff ALCY asked Ms. Davis if she could switch to the 7:00pm-3:00am shift due to the continuing harassment having a detrimental impact on her health.

52. Ms. Davis responded that there was no availability on the requested shift and did not offer any other opportunities for Plaintiff ALCY to transfer to another shift.

53. Then, in or around August 2021, Plaintiff ALCY contracted Covid-19, which caused her to become ill for approximately one month.

54. Plaintiff ALCY returned to work in or around September 2021.

55. However, between September and November 2021, Plaintiff ALCY experienced increasing symptoms from her high blood pressure and anxiety due to the hostile treatment by Defendant NORTHWELL's employees, so she had to take multiple additional sick days.

56. On or around December 4, 2021, Plaintiff ALCY returned to work after being out and noticed that a newly hired staff member, who is Hispanic, had been placed in the shift position that Plaintiff had requested but that Ms. Davis had told her was not available.

57. Between Plaintiff ALCY's return to work in or around December 2021 and early 2022, Mr. Rose continued to say, "here comes the Black lady" when he saw Plaintiff ALCY approaching.

58. Furthermore, Defendant PORTORO again asserted to Plaintiff ALCY that she was lazy because "all Black people are lazy."

59. Then, in or around late January 2022, Ms. Campos screamed at Plaintiff ALCY while she was at the nurse's station, telling Plaintiff, "You have to sit here all night and make sure all the call lights are being answered!"

60. Plaintiff ALCY explained to Ms. Campos that she was the only Technician on the floor that night and that she needed to be on her feet taking vital signs and monitoring patients, but Ms. Campos continued to yell at her that she "wasn't doing [her] job."

61. On or around January 25, 2022, after this shift when Ms. Campos had been particularly hostile, Plaintiff ALCY emailed Ms. Davis and complained about Ms. Campos' continuing offensive treatment.

62. Ms. Davis did not respond to Plaintiff ALCY's email, so Plaintiff spoke with Ms. Davis in person on or around the morning of January 28, 2022 regarding her continued complaints of discrimination and harassment.

63. In addition to discussing Ms. Campos' behavior, Plaintiff ALCY explicitly described Mr. Rose and Defendant PORTORO's continued racist statements toward her and said that the constant racism and harassment she was experiencing continued to cause a decline in her physical and mental health.

64. Plaintiff ALCY disclosed to Ms. Davis that she had sought treatment for anxiety, in addition to her high blood pressure treatments, due to the level of emotional distress she was experiencing at work.

65. Ms. Davis was unsympathetic to Plaintiff ALCY's complaints, and it was clear to Plaintiff that Ms. Davis was not taking her complaint seriously.

66. Ms. Davis questioned Plaintiff ALCY as to whether the other employees "really said those things" when Plaintiff ALCY described Defendant PORTORO calling Plaintiff and all

Black people "lazy" repeatedly and Mr. Rose saying "here comes the Black lady" as well as making the crude remark about her "pussy," and it appeared to Plaintiff that Ms. Davis did not believe her.

67. After Plaintiff ALCY's January 2022 complaint, Defendant PORTORO again repeated to Plaintiff ALCY that Plaintiff was lazy because she is Black.

68. Plaintiff ALCY also felt as though Defendant PORTORO was monitoring her more closely, and always seemed to be watching Plaintiff as she worked.

69. Defendant PORTORO would also frequently assign Plaintiff ALCY to work on the floor alone, even if there were other employees there who were able to assist.

70. In or around February 2022, Plaintiff ALCY applied and was approved for intermittent Family Medical Leave Act ("FMLA") leave due to her high blood pressure and the lethargy she was experiencing.

71. Plaintiff ALCY used her intermittent FMLA time on approximately three occasions between February and March 2022, and the increase of her symptoms was directly related to the stress she was experiencing in her hostile and discriminatory work environment.

72. On or around March 11, 2022, Plaintiff ALCY was feeling lethargic due to her medication and informed Defendant PORTORO, who was the acting charge nurse.

73. Defendant PORTORO was not sympathetic, and instead appeared to Plaintiff ALCY to be following her around and monitoring her behavior even more closely than usual.

74. When Plaintiff ALCY was on her scheduled break, Plaintiff went to the nurse's lounge to shut her eyes for several minutes to ensure her safety for the rest of the shift and her drive home afterwards.

75. Plaintiff ALCY did not ordinarily nap in the nurse's lounge, but she frequently saw other employees doing so during their breaks and knew no one had ever been penalized.

76. Plaintiff ALCY also knew that, since she was frequently required to do the bulk of the work available on the floor during her shifts, other employees had been able to take naps in the nurse's lounge beyond their scheduled break times, sometimes for multiple hours.

77. Plaintiff ALCY set an alarm to ensure that she did not rest longer than her break and returned to her station after her break to complete her shift without issue.

78. However, on or around March 14, 2022, a Defendant NORTHWELL employee called Plaintiff ALCY and informed her that she had been suspended for misconduct, namely sleeping on the job, pending an investigation.

79. Although Plaintiff ALCY was told there would be an investigation, she was never asked to participate in the investigation and was not able to explain the circumstances surrounding the allegations against her.

80. On or around March 25, 2022, Ms. Davis terminated Plaintiff ALCY's employment because there was allegedly video footage of Plaintiff sleeping.

81. Plaintiff ALCY requested to see the alleged footage, but Ms. Davis told her that she could not see the video and Plaintiff would need to turn in her badge immediately.

82. Defendant NORTHWELL terminated Plaintiff ALCY's employment in retaliation for her complaints of discriminatory conduct.

83. Plaintiff ALCY was unlawfully discriminated and retaliated against, humiliated, and degraded.

84. As a result of the acts and conduct complained of herein, Plaintiff ALCY suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails.

85. As a result of the acts and conduct complained of herein, Plaintiff ALCY experienced severe emotional and physical distress.

86. Defendants' actions and conduct were intentional and intended to harm Plaintiff ALCY.

87. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff ALCY demands punitive damages against all Defendants, jointly and severally.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## (Against Defendant NORTHWELL)

88. Plaintiff ALCY repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

89. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for relief based upon the unlawful employment practices of Defendant. Plaintiff complains that Defendant violated Title VII's prohibition against discrimination based, in whole or in part, upon an employee's race and national origin.

90. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e–2(a) by discriminating against Plaintiff because of her race and national origin:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

> because of such individual's **race**, color, religion, sex, or **national origin**; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

91. Defendant engaged in unlawful employment practices prohibited by Title VII, by subjecting Plaintiff to a hostile work environment on the basis of her race (Black) and national origin (Haitian).

92. Accordingly, as a result of the unlawful conduct of Defendant, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
## (Against Defendant NORTHWELL)

93. Plaintiff ALCY repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

94. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

95. Defendant NORTHWELL violated the sections cited herein as set forth through, among other things, unlawfully terminating Plaintiff as a result of her good faith complaint of discrimination.

96. Accordingly, as a result of the unlawful conduct of Defendant NORTHWELL, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE NYSHRL

96. Plaintiff ALCY repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

97. Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, **national origin**, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

98. Defendant engaged in an unlawful discriminatory practice by subjecting Plaintiff to discrimination based on her race (Black) and national origin (Haitian).

99. Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

### FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE NYSHRL

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

101. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section

applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

102. Defendants violated the section cited herein as set forth.

103. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against Defendant PORTORO)

104. Plaintiff ALCY repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

105. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

106. Defendant PORTORO violated this statute as set forth.

107. Accordingly, as a result of Defendant PORTORO's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## JURY DEMAND

124. Plaintiff ALCY respectfully requests a jury trial on all issues to be tried.

**WHEREFORE** Plaintiff ALCY respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the

Civil Rights Act of 1991, Pub. L. No. 102-166) and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* in that Defendants discriminated against Plaintiff on the basis of her race and national origin, and retaliated against Plaintiff for complaining of race and national origin discrimination;

B. Awarding damages to Plaintiff ALCY for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff ALCY compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff ALCY punitive damages;

E. Awarding Plaintiff ALCY attorneys' fees, costs, and expenses incurred in the prosecution of the action, and;

F. Awarding Plaintiff ALCY such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
January 5, 2023

                                                **PHILLIPS & ASSOCIATES,**
                                                **ATTORNEYS AT LAW, PLLC**

By: _____
Dorina Cela, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
dcela@tpglaws.com

# EXHIBIT A

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Marie Alcy<br>c/o Phillips & Associates, Attorneys at Law, PLLC 45 Broadway, Suite 430<br>New York, NY 10006 | From: | New York District Office<br>33 Whitehall St, 5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2023-00432 | PAUL ESPOSITO,<br>Investigator | 9295065260 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

 Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

 The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA):* You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Timothy Riera
12/13/2022

Enclosures(s)

**Timothy Riera**
**Acting District Director**

cc: Philip F Repash
  Northwell Health, Inc.
  2000 Marcus Avenue
  Sleepy Hollow, NY 10591

  Dorina Cela
  Phillips & Associates, Attorneys at Law, PLLC
  45 Broadway, Suite 430
  New York, NY 10006

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**  --  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of **the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**  --  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**  --  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**  --  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*