UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIE ALCY,

*Plaintiff*,

v.

NORTHWELL HEALTH, INC., *and* MARY
ANNE PORTORO,

*Defendants*.

---

No. 23-CV-88 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Erica Lynne Brant, Esq.
Kayla Wheeler, Esq.
Dorina Cela, Esq.
Phillips & Associates, PLLC
New York, NY
*Counsel for Plaintiff*

John Patrick Keil, Esq.
Stephanie Rose Correa, Esq.
Dorichel Rodriguez, Esq.
Keil & Correa LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Marie Alcy ("Plaintiff") brings this Action against Northwell Health, Inc., ("Northwell"),

and Mary Anne Portoro ("Portoro") (together, "Defendants"), alleging discrimination on the

basis of race and national origin, hostile work environment, and retaliation, in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq., and

the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290, et seq.

(*See generally* Compl. (Dkt. No. 1).)  Before the Court is Defendants' Motion for Summary

Judgment (the "Motion").  (See Not. of Mot. (Dkt. No. 35).)  For the reasons discussed below, Defendants' Motion is denied in part and granted in part.

## I.  Background

### A.  Factual Background

The following facts are taken from Defendants' 56.1 Statement of Undisputed Facts, (("Defs' 56.1") (Dkt. No. 36-2)), Plaintiff's Response to Defendants' 56.1 Statement (("Pl's Resp. 56.1") (Dkt. No. 40-2)), Plaintiff's 56.1 Statement of Additional Material Facts (("Pl's 56.1") (Dkt. No. 40-3)), and Defendants' Response to Plaintiff's 56.1 Statement (("Defs' Resp. 56.1") (Dkt. No. 44-1)), and admissible evidence submitted by the Parties.[1]

Northwell owns Phelps Hospital.  (See Pl's Resp. 56.1 ¶ 12.)  Emergency Department ("ED") Specialty Techs are "responsible for taking patient's vital signs, performing EKGs, bladder scanning, monitoring patients (including one-on-one constant observations), transporting patients, assisting patients with their activities of daily life (such as feeding or bathing), cleaning patient rooms, making patient beds, and greeting ambulances upon arrival to direct patients in their rooms."  (Id. ¶ 13.)  Charge Nurses supervise and assign to duties to Specialty Techs,

---

[1] The Court notes that the Parties pack their denials of each other's undisputed facts with substantive argumentation and assertions of inadmissibility.  For example, in response to Defendants' asserted fact that Northwell has policies prohibiting discrimination, harassment, and a hostile work environment, Plaintiff incorrectly asserts that the documents are inadmissible hearsay and argumentatively states that the policies are not adequate.  (See, e.g., Pl's Resp. 56.1 ¶¶ 1–11.)  Plaintiff's response does not actually and specifically controvert the existence of these policies.  Where a Party's denial fails to specifically controvert the fact in question, the fact is admitted to the extent the Court determines that it is supported by admissible record evidence. See Mae v. Quickway Estates LLC, No. 22-CV-3048, 2023 WL 6162927, at *1 n.2 (S.D.N.Y. Sept. 21, 2023) (deeming facts to which defendant asserted general denials admitted once the Court "scrutinized [p]laintiff's submitted evidence to determine whether the evidence supports [p]laintiff's statements").  Because Plaintiff does not actually controvert that Northwell had, at the relevant times, these policies in place, the Court will deem this fact admitted.

including designating Specialty Techs to the "A side" or "B side" of the Phelps Hospital ED. (*Id.* ¶¶ 17, 24.) Assignments are "contingent on the activity and staffing within the ED." (*Id.* ¶ 24.) Specialty Techs are required to wear Vocera communication devices, through which users can call specific individuals or broadcast a message to multiple individuals. (*Id.* ¶¶ 36–38.) When a patient exhibits suicidal ideation, is under the influence of drugs or alcohol, or otherwise is deemed a danger to themselves or others, the patient is placed under constant observation. (*Id.* ¶ 28.) The individual conducting the constant observation must keep the patient in sight at all times and remain an arm's length distance from the patient. (*Id.* ¶ 29.) An observer may be relieved by a Specialty Tech or a nurse. (*Id.* ¶ 33.)

Plaintiff, a Black woman of Haitian origin, (Defs' Resp. 56.1 ¶ 1), was employed at Northwell's Phelps Hospital as a Specialty Tech in the ED from December 2018 until her termination on March 25, 2022. (Pl's Resp. 56.1 ¶ 12.) Plaintiff worked the night shift, from 11:00 PM to 7:30 AM. (*Id.* ¶ 14.) Prior to her termination, Plaintiff did not have a history of discipline. (*Id.* ¶ 15.) During her employment, Plaintiff was supervised at various times by Charge Nurses Portoro, Jose Azupardo, Kyle Irish, and Leticia Campos. (*Id.* ¶ 40.) Charge Nurses report to the Nurse Manager of the ED, (*id.* ¶ 44)—during Plaintiff's employment at Phelps Hospital, Alayna Davis was the ED Nurse Manager, (*id.* ¶ 76). Rowena Estrera ("Estrera") began as Director of Nursing in late 2021 and was Davis' supervisor for approximately four months. (*Id.* ¶ 84, 88.) Davis resigned in April 2022 in lieu of termination for performance deficiencies. (*Id.* ¶ 86.)

Plaintiff complained to Portoro and other Charge Nurses that a fellow Specialty Tech, Lenora Peruccio ("Peruccio"), was assigned less work than Plaintiff. (Defs' Resp. 56.1 ¶¶ 19–

20, 26, 28.)[2]  Plaintiff claims the disparate workload began soon after her she started working at Northwell.  (*Id.* ¶ 19.)

In December 2021, Scott Rose ("Rose), a Northwell employee responsible for transporting patients, said to Plaintiff, "Move over you Haitian girl.  Your pussy stink."  (*Id.* ¶¶ 53, 60.)  Plaintiff rebuked Rose and was upset and offended by the comment.  (*Id.* ¶¶ 61–62.) Plaintiff complained to Davis about Rose's comment.  (Pl's Resp. 56.1 ¶ 153.)

At unspecified times throughout Plaintiff's employment, Portoro "made numerous offensive, disrespectful, and aggressive remarks to Plaintiff" related to Plaintiff's race.  (Defs' Resp. 56.1 ¶ 67.)  Specifically, Portoro noted that Plaintiff was "[B]lack," "lazy," and said that "[B]lack people don't like to work."  (Pl's 56.1 ¶ 29.)  Plaintiff complained to Davis about Portoro's conduct more than two times.  (Defs' Resp. 56.1 ¶ 72.)  Plaintiff's last complaint about Portoro occurred approximately three weeks before Plaintiff's termination.  (*Id.* ¶ 74.)

Northwell's policies prohibit employees from sleeping while on duty and note that sleeping may result in disciplinary action.  (Pl's Resp. 56.1 ¶ 9.)  On January 29, 2021, Portoro emailed Davis and other supervisors to report that Plaintiff had been observed sleeping during a constant observation.  (*Id.* ¶ 180.)  Portoro did not observe the incident herself.  (*Id.* ¶ 182.) Davis investigated, reviewed video surveillance, and did not find anything to substantiate the claim.  (*Id.* ¶ 183.)  On July 9, 2021, December 13, 2021, December 23, 2021, and January 10, 2022, Portoro emailed Davis and others about Plaintiff's poor work performance.  (*Id.* ¶¶ 186, 187, 189, 191.)  On March 7, 2022, Patient Care Associate Cristian Lopez emailed Davis,

---

[2] The Parties dispute the circumstances of Plaintiff's alleged complaints, including their manner and timing, whether the conduct complained of actually occurred, and whether Plaintiff's cited support is admissible.  (*See, e.g.*, Defs' Resp. 56.1 ¶¶ 19–20, 26.)

Estrera, and others claiming that he had found Plaintiff sleeping in a breakroom while on duty.
(*Id.* ¶ 202.)  Around this time, Plaintiff applied for Family and Medical Leave Act ("FMLA")
leave.  (*Id.* ¶ 221.)

On March 11, 2022, Plaintiff was directed by Portoro to conduct a constant observation,
even though Plaintiff was feeling unwell.  (*Id.* ¶¶ 223–24.)  Plaintiff suggested to Portoro that
Emmanuel, another Specialty Tech, conduct the constant observation, but Portoro rejected the
suggestion.[3]  (*Id.* ¶¶ 140, 225–26.)  Portoro reported to Davis and others that she had observed
Plaintiff sleeping during the constant observation and, at a different time, at the nurse's station.
(Defs' Resp. 56.1 ¶ 116.)  Plaintiff testified that she did not fall asleep during the constant
observation.  (Cela Decl., Ex. A ("Pl's Dep. Tr.") (Dkt. No. 40-5) at 193:6–195:12, 210:24–25.)
Davis testified at her deposition that Plaintiff did not fall asleep, (*id.*, Ex. B ("Davis Dep. Tr.")
(Dkt. No. 40-6) at 45:2–21, 49:13–23), which is at odds with her belief at the time of the
incident, (Correa Decl., Ex. 23 (Dkt, No. 36-1) at Northwell_000973 (email from Davis where
she writes that Plaintiff was asleep during the constant observation, as evidenced by the
surveillance video)).  Others testified that Plaintiff did fall asleep.  (*See* Cela Decl., Ex. E
("Portoro Dep. Tr.") (Dkt. No. 40-9) at 56:11–19 (Portoro testifying she saw Plaintiff sleeping
during the constant observation).)  Moreover, Defendants claim that video recordings showed
that Plaintiff was sleeping during the constant observation.  (*See* Correa Decl., Ex. 17 ("Estrera
Dep. Tr.") (Dkt. No. 35-18) at 33:18–34:24 (Estrera testifying that she reviewed video footage
that showed Plaintiff sleeping during the constant observation); *id.*, Ex. 18 ("Bueti Dep. Tr.")

---

[3] The Parties refer to "Emmanuel" or "Emanuel" in their 56.1 Statements.  (*See* Pl's
Resp. 56.1 ¶¶ 140–41; Defs' Resp. 56.1 ¶ 97.  Surprisingly, no Party seems to know Emmanuel's
surname.

(Dkt. No. 35-19) at 26:12–28:16 (Maria Bueti, an HR employee, testifying that she reviewed video footage that showed Plaintiff sleeping during the constant observation).)[4]

Plaintiff's termination is premised on two instances of Plaintiff falling asleep:  sleeping in the breakroom while on duty and sleeping during a constant observation.  (*See* Correa Decl., Ex. 25 ("Termination Notice") (Dkt. No. 35-24) at 2; *see also* Pl's Dep. Tr. at 209:15–24, 211:20–23.)  No lesser sanction was considered other than termination.  (Pl's Resp. 56.1 ¶ 274.)  The Parties dispute the roles that Portoro had in Plaintiff's performance evaluations—Defendants claim that she did not have any input or involvement, whereas Plaintiff claims that Portoro "played a role in supervising Plaintiff and reporting issues about [her] performance to supervisors, including Davis."  (*Id.* ¶ 82.)

The Parties also dispute whether Plaintiff complained about Portoro to Davis, (*id.* ¶¶ 59–62), whether Portoro's treatment of Plaintiff was racially-motivated, (*id.* ¶¶ 64–65), and the frequency of Plaintiff's alleged complaints, (*id.* ¶¶ 52–53).  All of Plaintiff's complaints were made orally.  (*Id.* ¶¶ 63, 286.)

B.  Procedural Background

Plaintiff initiated this Action on January 5, 2023.  (*See* Compl.)  The matter was referred to mediation, (Dkt. No. 12), which was unsuccessful, (Dkt. No. 14).  Fact discovery closed on November 27, 2023.  (Dkt. No. 21.)  On March 21, 2024, Defendants filed the instant Motion.

---

[4] The March 11, 2022, video recording in question no longer exists.  (*See* Pl's 56.1 ¶ 136; Defs' Resp. 56.1 ¶ 136.)  A November 2023 email from defense counsel to plaintiff's counsel indicates that the recording "was in possession of the Phelps Hospital [S]ecurity[D]department" until May 2022.  (Cela Decl., Ex. H (Dkt. No. 40-12) at 2.)  "The recording was saved on the hard drive of a computer in the Security Department, which crashed in May 2022.  The hard drive needed to be replaced and all that was saved on the hard drive was lost and unable to be recovered."  (*Id.*)

(*See* Not. of Mot.; Defs' Mem. in Supp. ("Defs' Mem.") (Dkt. No. 36).)  On May 22, 2024,

Plaintiff filed her Opposition.  (*See* Pl's Mem. in Opp. ("Pl's Opp.") (Dkt. No. 40).)  On June 28,

2024, Defendants replied.  (*See* Defs' Reply in Supp. ("Defs' Reply") (Dkt. No. 44).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v.

John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to

award summary judgment, the court must construe the record evidence in the light most

favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v.

Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232,

240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute

exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also

Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4

(S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the non[-]movant's claim," in which case "the non[-]moving party must

come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order

to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d

114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive

a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical'

possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P.

56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

If "any portion of an affidavit [is] not based on personal knowledge[, it] should be stricken." *Gemological Inst. of Am., Inc. v. Zarian Co.*, 349 F. Supp. 2d 692, 697 (S.D.N.Y. 2004) (quoting *Larouche v. Webster*, 175 F.R.D. 452, 454–55 (S.D.N.Y. 1996)); *see also Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 131 n.12 (2d Cir. 2004) (noting that the district court was free to disregard hearsay statements and speculation in affidavits); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"). As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"). However:

> [W]here the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys*, 426 F.3d at 554 (citation omitted).

B.  Title VII and NYSHRL

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "In adopting this language, 'Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin.'"  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (quoting *Chambers v. District of Columbia*, 35 F.4th 870, 882 (D.C. Cir. 2022) (Walker, J., concurring in part)).[5]

Title VII claims are evaluated under "the three-step burden shifting analysis of" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400–01 (2d Cir. 1998)).  To establish a prima facie case of discrimination, a plaintiff must show:  "(1) she was within [a] protected class; (2) she was qualified for the position; (3) she was subject to an adverse

---

[5] "Before bringing a suit for employment discrimination in federal court, a plaintiff must first timely file a discrimination charge with the [Equal Employment Opportunity Commission ("EEOC")]."  *Montana v. City of Mount Vernon*, No. 21-CV-260, 2023 WL 8097039, at *7 (S.D.N.Y. Nov. 21, 2023).  To be timely, a claim for discrimination under Title VII must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 161 (E.D.N.Y. 2020) (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999) (per curiam)); *see also Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*, No. 20-CV-337, 2022 WL 16834054, at *3 (N.D.N.Y. Nov. 9, 2022) (noting that New York's "State Division of Human Rights makes New York a . . . deferral state for Title VII purposes," and therefore, discrimination claims must be filed with the EEOC within 300 days when the employee knew of should have known of the alleged adverse employment action (internal quotation marks and citation omitted)).

Plaintiff alleges that she timely filed charges with the EEOC, received a Notice of Right to Sue, and commenced this Action within 90 days of the notice.  (Compl. ¶ 6–8.)  Defendants do not move for summary judgment on this ground or otherwise mention Plaintiff's EEOC charges.  (*See generally* Defs' Mem.)

employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Streichert v. Town of Chester, N.Y.*, No. 19-CV-7133, 2022 WL 4449305, at *6 (S.D.N.Y. Sept. 23, 2022) (internal quotation marks and citation omitted); *see also Chudnovsky v. Prudential Sec. Inc.*, No. 98-CV-7753, 2000 WL 1576876, at *7 (S.D.N.Y. Oct. 23, 2000) (same). The burden at this stage is minimal, but "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive." *Risco v. McHugh*, 868 F. Supp. 2d 75, 98–99 (S.D.N.Y. 2012) (citing *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x. 55 (2d Cir. 2002)); *see also Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) ("The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." (internal quotation marks and citation omitted)).

If the plaintiff sufficiently makes a prima facie case, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. If the employer satisfied its burden, the plaintiff must then show that the reasons presented was a pretext for discrimination." *Halkitis v. N.Y. City Dep't of Educ.*, No. 19-CV-11753, 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022) (quoting *DeMuth v. U.S. Small Bus. Admin*, 819 F. App'x 23, 25 (2d Cir. 2020)); *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) ("[T]he final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination."). The final step of the *McDonnell Douglas* framework requires the Court to examine the entire record—including evidence from the plaintiff's prima facie case, additional evidence suggesting pretext, and other evidence of the defendant's discriminatory or retaliatory intent—and "determine whether the plaintiff could satisfy [her] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated"

against her.  *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation marks and

citation omitted); *see also Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)

(explaining that the plaintiff's third-step burden to demonstrate pretext "merges with the ultimate

burden of persuading the court that [the plaintiff] has been the victim of intentional

discrimination").  "Whether judgment as a matter of law is appropriate in any particular case will

depend on a number of factors," including the "strength of the plaintiff's prima facie case, the

probative value of the proof that the employer's explanation is false," and any other properly

considered evidence that supports the employer's case.  *Parlato v. Town of E. Haven*, No. 22-

CV-1094, 2024 WL 4894572, at *5 (D. Conn. Nov. 26, 2024) (quoting *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 148–49 (2000)).[6]

The Second Circuit has stated repeatedly that "an extra measure of caution is merited

before granting . . . summary judgment in a discrimination action because direct evidence of

discriminatory intent is rare."  *See Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir.

2024) (quotation marks omitted); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101

(2d Cir. 2010) (emphasizing "the need for caution about granting summary judgment to an

employer in a discrimination case where . . . the merits turn on a dispute as to the employer's

intent." (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008))).  Because

discriminatory intent is "elusive" in nature, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d

72, 86 (2d Cir. 2015), "affidavits and depositions must be carefully scrutinized for circumstantial

proof which, if believed, would show discrimination," *Banks*, 81 F.4th at 259 (quoting *Schwapp*

---

[6] The burden shifting framework set forth by the Supreme Court in *McDonnell Douglas* also governs discrimination claims under the NYSHRL.  *See Osinoff v. Nuvance Health*, No. 22-CV-2017, 2024 WL 967190, at *8 (S.D.N.Y. Mar. 5, 2024); *accord McCall v. Genpak*, LLC, No. 13-CV-1947, 2015 WL 5730352, at *11 (S.D.N.Y. Sept. 30, 2015).

*v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).  That said, a plaintiff's "'reliance upon

conclusory statements or mere allegations' will not suffice to defeat summary judgment." *Moll*,

94 F.4th at 228 (quoting *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)).  Thus, summary

judgment remains proper when "the nonmoving party has failed to make a sufficient showing on

an essential element of her case with respect to which she has the burden of proof." *Id.* (quoting

*Celotex*, 477 U.S. at 322–23).  As the same approach applies to claims under Title VII and

NYSHRL, the Court evaluates the substance of Plaintiff's claims concurrently.[7]

C. Analysis

As a preliminary matter, the Court addresses Defendants' assertions that while Plaintiff's

Complaint contains allegations against Peruccio, Campos, Irish, and Azupardo, "[o]nly her

allegations regarding Portoro and Rose remain, in somewhat reduced form" because Plaintiff has

testified that these individuals did not treat her differently based on her race or national origin.

(Defs' Mem. 13 n.1.)  Plaintiff does not dispute this assertion in her Opposition—in fact,

Plaintiff does not mention Campos, Irish, or Azupardo in her Opposition, (*see generally* Pl's

Opp.), and mentions Peruccio only insofar as she was a similarly situated comparator, (*id.* at 9–

11, 19).  In her response to Defendants' 56.1 Statement, Plaintiff claims that, while Irish and

Azupardo did not treat her differently, they "each contributed to dividing tasks unequally and

subjecting Plaintiff to more work than her co-workers."  (Pl's Resp. 56.1 ¶ 42.)  As for Campos,

---

[7] In discrimination cases under the NYSHRL and Title VII, courts may apply a "mixed motive" analysis at the third stage of *McDonnell Douglas* framework.  "[A] plaintiff may make *either* a traditional showing of 'pretext'—i.e., that the employer's stated reason was false, and that the sole actual reason was discrimination—or a showing that even if the employer's reason is true, discrimination was still a motivating factor in the employment decision." *Bart v. Golub Corp.*, 96 F.4th 566, 573–74 (2d Cir. 2024) (emphasis in original).  The mixed-motive analysis does not apply to Title VII retaliation claims.  *See Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *13 n.19 (S.D.N.Y. Sept. 23, 2024).

Plaintiff avers that, while Campos did not make any explicit reference to Plaintiff's race or national origin, Campos' behavior was, "in [her] view, part of a pattern at Northwell of employees treating [her] with hostility because of [her] race and national origin." (Plaintiff Cert. (Dkt. No. 40-4) ¶ 7.) Because Plaintiff does not identify any evidence of discriminatory comments or behavior by Peruccio, Campos, Irish, and Azupardo, let alone respond to Defendants' arguments about these individuals, the Court will not address whether Peruccio, Campos, Irish, and Azupardo discriminated against Plaintiff on the basis of her race or national origin. *See United States v. Maranatha Human Servs.*, No. 18-CV-8892, 2024 WL 967093, at *13 (S.D.N.Y. Mar. 5, 2024) (holding that plaintiff waived an argument by failing to respond to defendant's assertion in her opposition); *Hess v. Mid Hudson Valley Staffco LLC*, No. 16-CV-1166, 2018 WL 4168976, at *18 n. 27 (S.D.N.Y. Aug. 30, 2018) ("The Court notes that Plaintiff waived this argument by failing to respond to Defendant's arguments in her opposition." (citing *Simon v. City of New York*, No. 14-CV-8391, 2015 WL 4092389, at *2 (S.D.N.Y. July 6, 2015))); *see also Wieder v. Greater Hudson Valley Sys.*, No. 21-CV-8026, 2024 WL 5107625, at *8 (S.D.N.Y. Dec. 13, 2024) (granting summary judgment on a discrimination claim because "plaintiff's beliefs cannot replace the admissible evidence required to permit an inference of discrimination and survive summary judgment" (quotation marks and citation omitted)); *Felton v. Monroe Cmty. Coll.*, 747 F. Supp. 3d 603, 618 (W.D.N.Y. 2024) (granting summary judgment on a discrimination claim because "plaintiff's mere subjective belief that he was discriminated against does not sustain a discrimination claim" (quoting *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014))); *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 181 (S.D.N.Y. 2009) (granting summary judgment on plaintiff's discriminatory termination claim where plaintiff proffered no evidence other than bare allegations).

### 1. Title VII & NYSHRL Discrimination

#### a. Prima Facie Case

Defendants do not challenge that Plaintiff was within a protected class (race and national origin), that she was qualified for her position, or that she was subject to an adverse employment action (termination). (*See generally* Defs' Mem.).) Defendants instead argue that Plaintiff has failed to adduce evidence that gives rise to an inference of discrimination. (*See id.* 13–15.) Plaintiff counters that she has carried her burden because her termination was "based on false complaints from Portoro, who consistently displayed clear animus towards Plaintiff because of her race," (Pl's Opp. 6), and "Portoro's assignment of a disproportionate workload to Plaintiff," (*id.* 12), both of which support an inference of discrimination.

A plaintiff may prove discrimination either by direct evidence of intent to discriminate or "indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87; *see also Banks*, 81 F.4th at 270 (same). To prove discrimination indirectly, a plaintiff can meet the requirements of the *McDonnell Douglas* burden shifting framework "by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Banks*, 81 F.4th at 270. The proper inquiry for the court is to determine "whether there [is] sufficient evidence for a reasonable jury to infer a discriminatory motive." *Id.* at 272.

#### i. False Complaints

As to animus, Plaintiff testified that Portoro said that "[B]lack people are lazy," (Pl's Dep. Tr. at 140:19–22), that Portoro called her lazy more than five and less than 10 times, (*id.* at 107:8–15), and that Portoro called Plaintiff "Black" in a derogatory manner, (*id.* at 123:8–18). Portoro denies making those statements. (Pl's Resp. 56.1 ¶ 73.) Defendants also argue that,

even assuming Portoro made those comments, she was unconnected to the adverse employment

action here—Plaintiff's termination. (Defs' Mem. 13.)

The question here is whether Plaintiff has met her minimal burden "permit[ting] an

inference of discriminatory motive" that is connected to Plaintiff's termination. *Risco*, 868 F.

Supp. 2d at 98–99. Plaintiff argues that she was subject to discriminatory invective from

Portoro, and that Portoro made a knowingly false complaint against Plaintiff that led to

Plaintiff's termination. The Parties dispute both whether Portoro made discriminatory

statements, (*see, e.g.*, Pl's Resp. 56.1 ¶ 73), and whether Plaintiff was actually sleeping while on

duty (*see* Pl's Dep. Tr. at 192:6–195:12, 209:24–25; Davis Dep. Tr. at 45:2–21, 49:13–23;

Portoro Dep. Tr. at 56:11–19; Estrera Dep. Tr. at 33:18–34:24; Bueti Dep. Tr. at 26:12–28:16).

Putting aside the dispute for the moment, it bears stating the obvious: comments "that indicate

racial or sexual stereotyping 'can create an inference of discriminatory motive.'" *Banks*, 81

F.4th at 272 (quoting *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997)). To

the extent Defendants' briefing can be read to assert that such commentary is not racist, the

Court dismisses the argument as absurd. In point of fact, courts have regularly noted that

statements like the ones here, suggesting that all Black people are lazy, are indeed racially

offensive. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 66, 70–71 (2d Cir.

2000) (reversing the district court's grant of summary judgment and finding that "a stream of

racially offensive comments" like "Blacks . . . are lazy and don't want to work" and calling

plaintiff a "lazy black boy" sufficed to carry a prima facie burden as to hostile work

environment); *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 454–55 (S.D.N.Y.

2023) (finding statements including "Black people are lazy and do not work hard" as part of

"offending commentary" sufficient to deny summary judgment on plaintiff's hostile work

environment claim); *Goode v. Donohue*, No. 12-CV-3982, 2015 WL 6680227, at *5 (E.D.N.Y.

Nov. 2, 2015) (finding a prima facie case of discrimination based on comments including "lazy

black bitch" and "her black ass was lazy" (alterations adopted)).

Returning to the fact disputes, courts faced with dueling testimony draw inferences in the

nonmovant's favor. *See Eckhaus v. City of New York*, No. 18-CV-6901, 2023 WL 3179506, at

*4 (E.D.N.Y. May 1, 2023). "Unless a plaintiff's testimony is contradictory, incomplete, self-

serving, or so replete with inconsistencies that no reasonable jury could credit it, the testimony

may be used to create a genuine issue of material fact." *Snowden v. County of Sullivan*, No. 22-

CV-514, 2024 WL 4882700, at *6 (S.D.N.Y. Nov. 25, 2024). While Plaintiff's evidence may

lack corroboration, and "boil[s] down to a few lines of [her] testimony," testimony that Portoro

made discriminatory comments over the course of multiple years is 'independently sufficient' to

give rise to a dispute of material fact." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,

No. 21-CV-695, 2024 WL 4277940, at *11 (S.D.N.Y. Sept. 23, 2024) (citing inter alia *Bellamy

v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019), and *Rentas v. Ruffin*, 816 F.3d 214, 221

(2d Cir. 2016)).

In *Penta v. Sears Roebuck, Co.*, No. 01-CV-2788, 2003 WL 21143071 (E.D.N.Y. May

12, 2003), the court dealt with a Title VII discrimination case with a similar set of circumstances.

There, the parties disputed whether plaintiff's supervisor's discriminatory comments gave rise to

an inference of discrimination. *Id.* at *6. The court left that determination to the finder of fact,

but found the comments sufficient to satisfy plaintiff's de minimis burden. *Id.* The defendant-

employer argued that plaintiff's supervisor's comments were immaterial because the supervisor

had "no direct input into the decision to terminate [p]laintiff." *Id.* The court found that the

supervisor played a meaningful role in plaintiff's termination because the defendant-employer

17

"relied on [the supervisor's] account of [circumstances] in making the decision to terminate [p]laintiff." *Id.* The court finally held that, "[i]f [the supervisor's] report was tainted by racial animus, a finder of fact could conclude that [the] entire decision making process was so tainted." *Id.*

In terms of the import of Portoro's allegedly racist comments, the Parties dispute whether Portoro was Plaintiff's supervisor. Regardless of that dispute, Plaintiff, in this context, must show "that the ultimate decision maker, in issuing the challenged employment decision, relied on statements made by the person harboring retaliatory or discriminatory animus." *Lin v. New York State Dep't of Labor*, No. 14-CV-771, 2017 WL 435811, at *9 (N.D.N.Y. Feb. 1, 2017). More broadly,

> [w]hen courts in this circuit hold that someone other than the ultimate decision maker "taint[ed] the ultimate employment decision in violation of Title VII," . . . there is typically some concrete evidence (or a plausible allegation) that the ultimate decision maker, in issuing the challenged employment decision, relied on statements made by the person harboring retaliatory or discriminatory animus . . . .

*Id.* (collecting cases) (internal citation omitted). Here, it is undisputed that Northwell relied, at least in part, on Portoro's report of Plaintiff sleeping during a constant observation in electing to terminate Plaintiff. (*See* Termination Notice 2 (referring to the incident reported by Portoro); Defs' Resp. 56.1 ¶¶ 116, 125.) And so it is of no moment that Portoro is not a direct supervisor as is commonly understood in Title VII cases. (*See* Defs' Mem. 18 (arguing that, because Portoro did not have input into Plaintiff's performance evaluations, did not have authority to discipline or reprimand Plaintiff, and was not directly involved in the decision to terminate).) *See Kenchi v. Hanesbrands Inc.*, No. 10-CV-1662, 2011 WL 4343418, at *6 (S.D.N.Y. Aug. 12, 2011) (denying summary judgment where a manager who made discriminatory statements was not the ultimate decisionmaker, but "drafted the [plaintiff's] performance improvement plan," and "'manager feedback' was cited as a basis for [the] plaintiff's need for improved

performance"); *Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2009 WL 890063, at *20 (S.D.N.Y. Mar. 31, 2009) (denying summary judgment where it was "undisputed" that the decisionmakers relied on a supervisor's characterization of the plaintiff's conduct "in deciding to terminate [the] [p]laintiff's employment").

Taking Plaintiff's version of events as true, the Court concludes that Plaintiff has satisfied her de minimis prima facie showing.

## ii. Disproportionate Workload

As to disproportionate workload, Plaintiff compares her workload, as assigned by Portoro and other Charge Nurses, to that of fellow Specialty Techs Timms and Peruccio. (Pl's Resp. 56.1 ¶ 139.) Peruccio is Asian and Filipino, (*id.* ¶ 117), and Timms is Black, (*id.* ¶ 106). By way of example, Plaintiff points to the testimony of Davis, who noted that, on one occasion, over the course of a single shift, Portoro called Plaintiff approximately 35 times and other Specialty Techs approximately five times. (*Id.* ¶ 176.) Plaintiff testified that she was directed by Charge Nurses to complete tasks that she believed should have been assigned to Timms and Peruccio. (*Id.* ¶ 110.) Plaintiff complained to Davis that she received a disproportionate workload in comparison to Timms and Peruccio. (*Id.* ¶ 139.) Plaintiff does not mention Timms in her Opposition. (*See generally* Pl's Opp.)

"A showing of disparate treatment—that is, a showing that an employer treated [the] plaintiff 'less favorably than a similarly situated employee outside [her] protected group'—is a recognized method of raising an inference of discrimination for the purpose of making out a prima facie case.'" *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010); *see also Alvarado*, 631 F. Supp. 3d at 115 (same).

Plaintiff has failed to show that she was treated less favorably than any similarly situated employees outside her protected group. This is because one of her comparators, Timms, is a member of her protected group—that is, both Plaintiff and Timms are Black. (Defs' Resp. 56.1 ¶ 1; Pl's Resp. 56.1 ¶ 106.) "This *defeats* any inference of discrimination *on the basis of*" Plaintiff's race. *Adam v. New York State Unified Court Sys.*, No. 22-CV-9739, 2023 WL 5003593, at *3 (S.D.N.Y. Aug. 4, 2023) (emphasis added); *see also Rizzo v. New York City Dep't of Sanitation*, No. 23-CV-7190, 2024 WL 3274455, at *5 (S.D.N.Y. July 2, 2024) (A plaintiff "cannot establish that [she] was terminated in circumstances giving rise to an inference of discrimination where the similarly situated comparators are of the same protected class." (quoting *Toussaint v. N.Y. Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 212–13 (S.D.N.Y. 2017) (collecting cases), *aff'd*, 706 F. App'x 44 (2d Cir. 2017) (summary order))).

Plaintiff cannot ignore Timms and rely on Peruccio to support her claim. As stated above, Plaintiff must show that she was treated less favorably than a similarly situated employee outside her protected group. *Ruiz*, 609 F.3d at 493. Taking Plaintiff's version of the facts as true, Peruccio is one such employee. (*See* Pl's Opp. 9–10.) However, the comparison to Peruccio is largely negated by the existence of Timms—courts in the Second Circuit regularly hold that the existence of similarly situated comparators in a plaintiff's protected group undermines an inference of discrimination on the basis of the protected characteristic, even when there are other comparators outside of plaintiff's protected group. *See Hannah v. Wal-Mart Stores, Inc.*, No. 12-CV-1361, 2016 WL 554771, at *10 (D. Conn. Feb. 11, 2016) (finding no inference of discrimination where five of the 15 jobs to which plaintiff applied were filled by members of the same protected class, and collecting cases); *Blasi v. New York City Bd. of Educ.*, No. 00-CV-5320, 2012 WL 3307227, at *15 (E.D.N.Y. Mar. 12, 2012) (finding no inference of

discrimination where three of four comparators were members of the same protected class), *report and recommendation adopted*, 2012 WL 3307346 (E.D.N.Y. Aug. 12, 2012), *aff'd*, 544 F. App'x 10 (2d Cir. 2013); *Smith v. Planas*, 975 F. Supp. 303, 308 (S.D.N.Y. 1997) (same); *Samuels v. New York State Dep't of Corr. Servs.*, No. 94-CV-8645, 1997 WL 253209, at *5 (S.D.N.Y. May 14, 1997) (granting summary judgment for defendants because "[t]wo of the four promotions of which [plaintiff] complains were, in fact, promotions of black males—members of the protected class of which plaintiff is a member.  As such, plaintiff has failed to make out a prima facie case of race discrimination, because she cannot show that the adverse employment action taken against her—defendants' delay in promoting her—occurred in circumstances giving rise to an inference of race discrimination."); *Thornton v. Simpson Thacher & Bartlett*, No. 83-CV-8409, 1986 WL 6012 at *4 (S.D.N.Y. May 21, 1986) (directing verdict for defendant because, where Plaintiff pointed to two white and two black employees who were treated more favorably, she established, at most, "that she was treated differently from all other employees, both white and black."), *aff'd mem.*, 833 F.2d 1003 (2d Cir.1986).[8]

Accordingly, Plaintiff has failed to state a claim for Title VII discrimination as it relates to allegedly disproportionate workload.

---

[8] Plaintiff does not argue that she was given a disproportionate workload due to her national origin.  It is true that Plaintiff and Peruccio are of different national origins—Haitian and Filipino, respectively.  (Pl's 56.1 ¶¶ 1, 23.)  Timms' national origin is unknown.  But when it comes to her disproportionate workload claim, Plaintiff focuses on discrimination on the basis of race.  (*See* Pl's Opp. 9–10.)  Further, Plaintiff refers to discrimination on the basis of national origin only as it relates to Rose.  *See* infra Section II.B.3.  Plaintiff also admits that Portoro, who she alleges assigned Plaintiff a disproportionate workload on the basis of her race, made no comments regarding Plaintiff's national origin.  (Pl's Resp. 56.1 ¶ 50.)  Thus, even if Plaintiff had made this argument, she has failed to adduce evidence giving rise to an inference of discrimination in workload on the basis of her national origin.

b.  Legitimate Non-Discriminatory Justification

Defendants' proffered justification for Plaintiff's termination is that she was observed twice sleeping while on duty, and that her termination based on those instances is wholly unrelated to any discrimination.  (Defs' Mem. 20–21.)  Defendants further argue that Plaintiff has "not present[ed] any evidence that her race or national origin . . . were factors considered by [Defendants] in the decision to terminate her employment at Phelps Hospital."  (*Id.* 20.)

The employer's burden is one of "production" not persuasion, *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993)), and thus "is not a particularly steep hurdle," *Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010), *aff'd*, 461 F. App'x 59 (2d Cir. 2012) (summary order).  "Both the Supreme Court and [the Second Circuit] have emphasized that, in typical discrimination and retaliation cases, the defendant must articulate its legitimate, nondiscriminatory reason with some specificity."  *Bucalo*, 691 F.3d at 132.  Defendants must thus "clearly set forth, through the introduction of admissible evidence, the reasons for the [alleged adverse action]."  *Kirkland-Hudson*, 2024 WL 4277940, at *12 (quoting *Burdine*, 450 U.S. at 255).

Defendants get the standard backwards—at this stage, it is *Defendants'* burden to introduce admissible evidence as to Plaintiff's termination.  That being said, Defendants' "explanation of [their] legitimate nondiscriminatory reasons" is "clear and specific."  *Kottapalli v. ASML US, LP*, No. 21-CV-1076, 2024 WL 3811725, at *5 (D. Conn. Aug. 14, 2024) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003)).  In particular, Defendants point to Plaintiff's termination notice, which provides that Plaintiff's falling asleep on two occasions, once during a constant observation, was sufficiently egregious misconduct to warrant her

22

termination.  (*See* Termination Notice 2.)  According to Northwell, Plaintiff's "conduct put the patient, other patients, and [her] fellow employees at the Hospital in serious risk."  (*Id.*)  This is clearly evidence that, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action."  *Sollazzo v. Just Salad Restaurant*, No. 15-CV-252, 2018 WL 1273661, at *7 (S.D.N.Y. Mar. 5, 2018) (emphasis omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

> c.  Pretext

"To satisfy the third-stage burden under *McDonnell Douglas* and survive summary judgment in a Title VII disparate treatment case, a plaintiff may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class."  *Bart v. Golub Corp.*, 96 F.4th 566, 576 (2d Cir. 2024).  A plaintiff may carry her burden at this stage "by reliance on the evidence comprising the prima facie case, without more, if that evidence is independently sufficient under step three of *McDonnell Douglas*."  *Id.* (internal quotation marks omitted) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)).  "In such cases, 'the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial,' . . . precluding summary judgment."  *Id.*

In the Court's review of the Parties' briefing and the record evidence, whether Portoro made discriminatory comments and concocted the report of Plaintiff's falling asleep during a constant observation are disputed facts upon which Plaintiff's discrimination claim hinges.  As noted above, the video footage of Plaintiff during the constant observation on March 11, 2022, is

unavailable. *See* supra n.4. Further, Davis' testimony on the issue is inconsistent. (*Compare* Correa Decl., Ex. 23 (Dkt. No. 36-1) at ECF 10 (an email by Davis describing the video footage as showing Plaintiff was "head bobbing, goes to sleep" and "head back and sleeping"), *with* Davis Dep. Tr. at 49:24–50:2 ("Q: Okay. So is it your testimony today that you did not see Marie Alcy actually sleeping at any time during this observation, correct? A: Correct, absolutely not.").) In the absence of the footage, and with conflicting testimony cited by both Parties, it cannot be said that there are no fact disputes which make summary judgment appropriate.

While Plaintiff's testimony as to Portoro's animus is a thin reed on which to rest her case, her consistent, uncomplicated, and not "wholly improbable" testimony is "independently sufficient to raise a genuine issue of material fact." *Bellamy*, 914 F.3d at 746 (citing *Rentas*, 816 F.3d at 221); *see also Lara v. Port Auth. of New York and New Jersey*, No. 20-CV-10383, 2023 WL 2185853, at *5–6 (S.D.N.Y. Feb. 23, 2023) (finding that plaintiff's testimony, "[w]hile admittedly lacking specificity and rather thin," was nonetheless sufficient to defeat defendant's motion for summary judgment); *Drayton v. City of New York*, No. 17-CV-7091, 2021 WL 1163108, at *2–3 (E.D.N.Y. Mar. 26, 2021) (denying a motion for reconsideration of the court's earlier ruling that plaintiff's deposition testimony raised a triable issue of fact that survived summary judgment). Accordingly, the Court denies summary judgment as to this claim. *See, e.g.*, *Cromartie v. Dep't of Corr.*, No. 21-CV-1236, 2024 WL 1344598, at *5–6 (D. Conn. Mar. 29, 2024) (denying defendant's motion for summary judgment where there were disputes of material fact related to pretext); *Osekavage v. Sam's East, Inc.*, 619 F. Supp. 3d 379, 392–93 (S.D.N.Y. Aug. 3, 2022) (noting that "issues of fact exist as to whether Defendants' legitimate, non-discriminatory reason was simply pretext for . . . discrimination"); *Penta*, 2003 WL

21143071, at *7–8 (in similar circumstances, denying summary judgment because Plaintiff's termination "occurred in debatable circumstances" and "[t]he conduct and resolution of that debate are properly left to the trier of fact." (citation omitted)).

2.  Title VII & NYSHRL Retaliation

Plaintiff also brings a retaliation claim under Title VII and NYSHRL.  The *McDonnell Douglas* burden-shifting framework "govern[s] retaliation claims under" Title VII and NYSHRL.  *Farmer v. Shake Shack Enterprises, LCC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020).  "Title VII forbids an employer from discriminating against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter.'"  *Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *13 (S.D.N.Y. Mar. 30, 2022) (quoting *Farmer*, 473 F. Supp. 3d at 330 (quoting 42 U.S.C. § 2000e-3(a))).  "The NYSHRL similarly makes it unlawful for an employer to retaliate or discriminate against an employee because she 'has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified[,] or assisted in any proceeding under this article.'"  *Farmer*, 473 F. Supp. 3d at 330 (alteration in original) (quoting N.Y. Exec. Law § 296(7)).  "A claim for retaliation is analyzed under the same three-part *McDonnell Douglas* burden shifting test, but the elements of the prima facie case for retaliation differ slightly from those for discrimination."  *Gamble v. Fieldston Lodge Nursing & Rehabilitation Ctr.*, 697 F. Supp. 3d 112, 123 (S.D.N.Y. 2023).

"To make out a prima facie case of retaliation, a plaintiff must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected

activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs,*
*P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (italics omitted) (quoting *Lore v. City of Syracuse*, 670 F.3d
127, 157 (2d Cir. 2012)). If Plaintiff has made out a prima facie case of retaliation, then the
Court's analysis for this claim would mirror that of Title VII discrimination. Therefore, if
Plaintiff has made a prima facie case, then the Court would find that there is an issue of material
fact such that summary judgment is precluded.

Plaintiff argues that she has met this prong because she complained about Portoro's
comments in December 2021. (*See* Pl's Opp. 22 (citing Pl's Dep. Tr. at 291:8–15).)[9]
Defendants' arguments against retaliation are the same as against discrimination. (*See* Defs'
Mem. 20–21.) To qualify as protected activity, an employee "need not prove that her underlying
complaint of discrimination had merit," *Lore*, 670 F.3d 127, 157 (2d Cir. 2012), but only that she
had a "good faith, reasonable belief that the underlying challenged actions of the employer
violated [Title VII]," *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001). "The reasonableness of
the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Gamble*, 697
F. Supp. 3d at 124 (quoting *Kelly*, 716 F.3d at 14–15).

Considering the totality of the circumstances, Plaintiff has shown that her complaints
were motivated by a good faith belief that Portoro's conduct was unlawful under Title VII.
Plaintiff's testimony indicates that she complained to Davis that Portoro was "being disrespectful
and calling [her] lazy, . . . [B]lack, [that she] do[es]n't like to work" and asked Davis "talk to
[Portoro] or something so it can get better." (Pl's Dep. Tr. at 289:20–290:5.) Plaintiff claims
she complained about Portoro to Davis multiple times. (*Id.* at 290:24–291:7.) "The Court finds

---

[9] The deposition transcript refers to Plaintiff complaining in December 2022. This
appears to be a mistake, as Plaintiff was terminated in March 2022. (*See* Termination Notice 2.)

that Plaintiff's testimony is more than sufficient to establish that she possessed the requisite good faith, subjective belief in making her complaints, and that her complaints properly constitute protected activity under the law." *Gamble*, 697 F. Supp. 3d at 124.

As to the second prong of Plaintiff's prima facie case, Defendants argue that the decision to terminate Plaintiff was made by individuals who were not aware of any protected activity on the part of Plaintiff. (*See* Defs' Mem. 23–24.) However, "a plaintiff may rely on 'general corporate knowledge' of her protected activity to establish the knowledge prong." *Zann Kwan*, 737 F.3d at 844; *see also Freckleton v. Mercy College NY*, No. 22-CV-1985, 2023 WL 2648827, at *11 (S.D.N.Y. Mar. 27, 2023) ("The 'Second Circuit has made clear that it is not necessary that particular individuals know of the protected activities at issue to satisfy the second element of the retaliation analysis[.]'" (quoting *Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med.*, No. 11-CV-8934, 2014 WL 896744, at *11 (S.D.N.Y. Mar. 3, 2014) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)))). By showing that she complained to Davis, her direct supervisor, (Pl's Resp. 56.1 ¶ 48), who was responsible for addressing complaints from employees under her supervision, (Defs' Resp. 56.1 ¶ 46), Plaintiff satisfies this prong.

The Parties do not dispute that Plaintiff's termination is an adverse action, which just leaves the question of causation. (*See* Defs' Mem. 13 (arguing that Plaintiff's termination, an adverse action, did not occur under circumstances giving rise to an inference of discrimination).)[10] "[W]ith respect to the causation element, 'a plaintiff must plausibly plead a

---

[10] Plaintiff also argues that her disproportionate workload constitutes an adverse action. (*See* Pl's Opp. 22–23.) As discussed above, *see* supra Section II.C.1.a.ii, Plaintiff's disproportionate workload claim fails because she has failed to make a prima facie showing that raises an inference of discrimination. With respect to her retaliation claim, Plaintiff argues that,

connection between the act and [her] engagement in protected activity." *Kirkland-Hudson*, 2024

WL 4277940, at *15 (quoting *Vega*, 801 F.3d at 90).

> A plaintiff can demonstrate the causal connection in one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or

---

following her December 2021 and January 2022 complaints about Portoro, "Portoro's conduct against [Plaintiff] intensified . . . ." (Pl's Opp. 23 (citing Pl's 56.1 ¶¶ 85–86).) It is true that being assigned a disproportionate workload can qualify as an adverse employment action. *See Einsohn v. New York City Dep't of Educ.*, No. 19-CV-2660, 2022 WL 955110, at *7 (E.D.N.Y. Mar. 30, 2022). Plaintiff cites her deposition testimony in support of the contention that Portoro "went after Plaintiff with a vengeance" after Plaintiff's December 2021 and January 2022 complaints. (*See* Pl's 56.1 ¶ 86.) These citations do not support the contention that Plaintiff was assigned a disproportionate workload *in connection with* Plaintiff's complaints. (*See* Pl's Dep. Tr. at 178:21–180:7 (testifying that "things was getting out of control" in relation to "feel[ing] unwanted, like [Plaintiff] was not part of the team or the workload itself and stuff like that."); *id.* at 281:19–282:25 (testifying that Portoro "retaliate[d] against [Plaintiff]" by "choos[ing] who [Portoro] want[ed] to work" and telling Plaintiff to work "[i]nstead of harassing [Peruccio]."); *id.* at 292:10–18 (testifying that Portoro's comments about Plaintiff being "[B]lack and lazy" "got worse after [Plaintiff] complained to [Davis] about those comments[.]"); *id.* at 297:25–298:5 (testifying that things with Portoro "got worse" in that Portoro was "tackling me more, she's looking for trouble to get ride of me).) Taken together, and drawing inferences in Plaintiff's favor, these citations are insufficient because they do not establish a causal connection or temporal proximity to Plaintiff's complaints; rather, they suggest that *Portoro's comments*, not Plaintiff's workload, intensified in the wake of Plaintiff's complaints. The record is simply too vague to even infer that the assignment of a disproportionate workload followed Plaintiff's complaints. (*See* Pl's Dep. Tr. at 288:11–289:15 (testifying that she complained about Portoro and workload regularly in 2019, 2020, 2021, and 2022, but not to the extent that her disproportionate workload *followed* her complaints).) Accordingly, because Plaintiff has failed to adduce facts that make the necessary causal connection, the Court "holds that a jury could not find that [these] vague temporal proximity references [sufficient] to establish a prima facie case on" Plaintiff's retaliation claim as it relates to disproportionate workload. *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 885 (S.D.N.Y. 2013); *see also Paola v. DeJoy*, 624 F. Supp. 3d 305, 323–24 (W.D.N.Y. 2022) (granting summary judgment because there was no inference of retaliation where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity" (quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))); *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 126–27 (S.D.N.Y. 2020) (granting summary judgment on a retaliation claim where there was "no causal connection between any alleged protected activity and [adverse action]); *Farias v. Instructional Sys.*, 259 F.3d 91, 99 (2d Cir. 2001) (declining to accept "conclusory statements unsupported by the record" as grounds to deny summary judgment).

(2) directly, through evidence of retaliatory animus directed against the plaintiff by
the defendant."

*Kirkland-Hudson*, 2024 WL 4277940, at *15 (quoting *Gordon*, 232 F.3d at 117, and citing

*Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019)).  Plaintiff argues that

she has proffered direct evidence of retaliatory animus because Portoro's conduct against

Plaintiff allegedly intensified after she made a complaint to Davis and that Plaintiff's complaint

to Davis and Portoro making the allegedly false report that contributed to Plaintiff's termination

occurred in close proximity.  (Pl's Opp. 23.)

Plaintiff makes this argument but fails in her briefing to provide clear, or even rough,

dates as to these events.  In reviewing the record, the Court understands that Plaintiff alleges she

made complaints about Portoro's treatment throughout 2020, 2021, and 2022.  (Pl's Dep. Tr. at

288:23–291:15.)  "Causation must be proved 'according to traditional principles of but-for

causation, which requires proof that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer.'"  *Joyce v. Remark Holdings,*

*Inc.*, No. 19-CV-6244, 2022 WL 179839, at *4 (S.D.N.Y. Jan. 20, 2022) (quoting *Zann Kwan*,

737 F.3d at 845 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013))).  The

but-for standard, however, "does not alter the plaintiff's ability to demonstrate causation at the

prima facie stage on summary judgment or at trial indirectly through temporal proximity."  *Zann*

*Kwan*, 737 F.3d at 845.  The Second Circuit "has not imposed a strict time limitation when a

retaliation claim relies exclusively on temporal proximity."  *Agosto v. New York City. Dep't of*

*Educ.*, 982 F.3d 86, 104 (2d Cir. 2020).  Nevertheless, "a gap of more than several months is

typically too long by itself to survive summary judgment."  *Id.*

However, Plaintiff has plausibly plead a causal connection.  Plaintiff testified that her last

complaint about Portoro was made just three weeks before she was terminated, (Defs' Resp. 56.1

¶ 74), indicating sufficient temporal proximity to carry her burden at this stage.  *See Bamba v. United States Dep't of Homeland Sec.*, No. 22-CV-7407, 2024 WL 3924810, at *20–22 (S.D.N.Y. Aug. 23, 2024) (finding a gap of a few months as sufficient to demonstrate causation for plaintiff's prima facie case), *appeal pending*, No. 24-2558 (2d. Cir. Sept. 26, 2024); *Little v. City of New York Dep't of Fin.*, No. 20-CV-1979, 2022 WL 4539574, at *5 (E.D.N.Y. Sept. 28, 2022) (finding that one-month between complaint and termination was sufficient to plead a causal connection at this stage); *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 319 (E.D.N.Y. 2014) (finding plaintiff carried his burden at this stage where he plausibly plead a one-month gap between his complaint and termination), *aff'd*, 594 F. App'x 29 (2d Cir. 2015).

As Plaintiff has established a prima facie case for retaliation, the Court turns to the second stage of the *McDonnell Douglas* framework, where Defendants again argue that Plaintiff's termination was due solely to her sleeping twice while on duty.  (Defs' Mem. 20–21.) Again, at the final step of the framework, Plaintiff must rebut Defendants' proffered reason.  And again, the Court concludes that Plaintiff has raised a genuine issue of material fact as to whether Portoro's report was knowingly false.  *See Kirkland-Hudson*, 2024 WL 4277940, at *17 (denying summary judgment where there was close temporal proximity of a few months between the protected conduct and adverse action); *Bernardi v. New York State Dep't of Corr. & Cmty. Supervision*, No. 19-CV-11867, 2023 WL 3230558, at *9 (S.D.N.Y. May 3, 2023) (denying summary judgment where there was close temporal proximity of four days between the protected conduct and adverse action); *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 655 (S.D.N.Y. 2015) (denying summary judgment where inconsistencies in contemporaneous reports about the plaintiff's performance along with temporal proximity between the protected activity and adverse action created a triable issue as to whether termination of employee for performance

issues was pretext for retaliation); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156–57

(2d Cir.2000) (stating "evidence satisfying the minimal *McDonnell Douglas* prima facie case,

coupled with evidence of falsity of the employer's explanation," may sustain a finding of

retaliation).  Accordingly, the Court denies summary judgment on this claim.

     3.  Title VII Hostile Work Environment

     The Parties also sharply dispute Plaintiff's Title VII hostile work environment claim.  "In

order to establish a hostile work environment claim under Title VII, a plaintiff must produce

evidence that the complained of conduct '(1) is objectively severe or pervasive—that is, creates

an environment that a reasonable person would find hostile or abusive; (2) creates an

environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an

environment because of the plaintiff's . . . protected characteristic.'"  *Russo v. New York*

*Presbyterian Hosp.*, 972 F. Supp. 2d 429, 446 (E.D.N.Y. 2013) (quoting *Robinson v. Harvard*

*Prot. Servs.,* 495 F. App'x. 140, 141 (2d Cir. 2012) (summary order) (internal quotation marks

omitted) (quoting *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007))).  "To show that conduct

was objectively severe or pervasive, a plaintiff 'must demonstrate either that a single incident

was extraordinarily severe, or that a series of incidents were sufficiently continuous and

concerted to have altered the conditions of her working environment.'"  *Murphy v. Stonybrook*

*Univ. Hosp.*, No. 20-CV-1298, 2022 WL 20527322, at *7 (E.D.N.Y. Sept. 13, 2022) (alteration

adopted) (quoting *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 387 (E.D.N.Y. 2018)).

"In determining whether a work environment is hostile, [the] Court must consider the totality of

the circumstances, which includes:  (1) the frequency of the discriminatory conduct; (2) its

severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4)

whether it unreasonably interferes with an employee's work performance." *Gamble v. Fieldston*

*Lodge Nursing & Rehab. Ctr.*, No. 20-CV-10388, 2022 WL 1778488, at *2 (S.D.N.Y. June 1, 2022) (quotation marks omitted) (quoting *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-0410, 2021 WL 4944285, at *3 (2d Cir. Oct. 25, 2021) (summary order)). "Where discriminatory acts and remarks were made by a co-worker rather than a supervisor, 'the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Halkitis*, 2022 WL 392911, at *4 (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)).

 With respect to Portoro, Plaintiff alleges that discriminatory comments based on her race and a disproportionate workload assigned by Portoro constitute a hostile work environment. (*See* Pl's Opp. 17.) A disproportionate workload can support a hostile work environment claim. *See Kirkland-Hudson*, 2024 WL 4277940, at *13. As discussed above, Plaintiff's claim of disproportionate workload fails because a similarly situated comparator from Plaintiff's protected group (Timms) was treated more favorably than Plaintiff, thereby undermining any comparison between Plaintiff and a similarly situated comparator outside her protected group (Peruccio). *See* supra Section II.C.1.a.ii. Plaintiff's hostile work environment claim "rises and falls with her discrimination claim" to the extent both relate to a disproportionate workload. *Kirkland-Hudson*, 2024 WL 4277940, at *13. Accordingly, Plaintiff cannot sustain her hostile work environment claim on a claim of a disproportionate workload.

 That leaves Portoro's alleged discriminatory comments. The Parties dispute whether Portoro made comments as to Plaintiff's race. (*See* Pl's Resp. 56.1 ¶¶ 72–75.) They also dispute the frequency and nature of Plaintiff's complaints about Portoro to Davis. (*See id.* ¶¶ 52–53; Defs' Resp. 56.1 ¶ 29.), The existence of these disputes compels denial of summary judgment as

to this claim as it relates to Portoro's comments and how those comments may support Plaintiff's argument as to pretext. *Kirkland-Hudson*, 2024 WL 4277940, at *17 (denying summary judgment where there was an issue of material fact as to pretext); *Bernardi*, 2023 WL 3230558, at *9 (same); *Buczakowski*, No. 18-CV-330, 2022 WL 356698, at *13–14 (N.D.N.Y. Feb. 7, 2022) (same).

With respect to Rose, Plaintiff alleges one instance in which Rose, a co-worker, made comments referencing her Haitian national origin. (*See* Pl's Opp. 17.) Plaintiff testified that Rose made an inappropriate comment directed at Plaintiff , saying "Move over you Haitian girl. Your pussy stink." (Pl's Resp. 56.1 ¶¶ 148–49.) Plaintiff rebuked Rose for the comment and testified that an unidentified Charge Nurse was present at the exchange. (*Id.* ¶¶ 150–51.) Plaintiff also testified that this was the only time that Rose spoke to her aggressively. (*Id.* ¶ 154.)

The Court finds that this single incident, while certainly troubling, does not qualify as extraordinarily severe. Courts that have found single incidents sufficiently severe usually do so in the context of physical harassment. *See, e.g.*, *Domingues v. Barton Chevrolet Cadillac*, No. 18-CV-7772, 2021 WL 637016, at *5 (S.D.N.Y. Feb. 17, 2021) (collecting cases). While a jury could credit Plaintiff's subjective perception that Rose's conduct created a hostile or abusive environment, no reasonable jury could find that the comment created "an intolerable alteration" of Plaintiff's "working conditions, so as to substantially interfere with or impair [her] ability to do [her] job." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 672 (S.D.N.Y. 2012) (quotation marks omitted) (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 78–79 (2d Cir. 2008)). The Second Circuit has held that "an obscene and humiliating verbal tirade that undermines the victim's authority in the workplace" could meet the "extraordinarily severe" standard. *Mathirampuzha*, 548 F.3d at 79 (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154(2d Cir.

2000)).  Some factors that "would enhance the statement's severity for the purpose of [this] analysis" include epithets, revealing personally sensitive or private information, or levying salacious allegations.  *Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 564 (S.D.N.Y. 2022).  No reasonable jury could find that Rose's single comment, while certainly objectionable, is comparable to such a tirade, as the comment does not come close to those circumstances in which courts in the Second Circuit have found that a single comment or verbal incident meets the "extraordinarily severe" standard.  *See, e.g.*, *Banks*, 81 F.4th at 264 (denying summary judgment where a jury could find sufficient an incident "involv[ing] a perceived physical threat" and "directly challeng[ing] [the plaintiff's] authority and compromis[ing] her ability to fulfill her supervisory duties"); *Howley*, 217 F.3d at 154 (denying summary judgment where a jury could find sufficient an incident where plaintiff was called vituperative and sexually explicit names and the screed graphically suggested that the plaintiff had performed sexual acts to attain her position); *cf. Johnstone v. Village of Monticello*, No. 14-CV-9523, 2016 WL 9078806, at *6 (S.D.N.Y. June 15, 2016) (finding that a single tirade, though "undeniably laden with offensive, race-related slurs," was insufficient to support plaintiff's claim of a hostile work environment).

In an attempt to preserve the claim as it relates to Rose, Plaintiff argues that Rose's comment must be viewed alongside Portoro's actions.  (Pl's Opp. 19.)  In order for Rose's comment to be viewed alongside those of Portoro's, because Rose is a co-worker and not a supervisor, Plaintiff must also demonstrate that Northwell "failed to provide a reasonable avenue for complaint" or that it knew or should have known about the harassment and failed to take appropriate remedial action.  *See Halkitis*, 2022 WL 392911, at *4.  While Plaintiff claims that she was unaware of the proper avenue for her complaint, (*see* Defs' Resp. 56.1 ¶ 45), Defendants point to Northwell's Employee Handbook, which provides that complaints of discrimination or

harassment should be reported to "Human Resources department or a supervisor or manager." (Correa Decl., Ex. 1 (Dkt. No. 35-2) at Northwell_000790.)[11]  By the terms of the Employee Handbook, Plaintiff properly took advantage of an avenue for her complaint against Rose by complaining to Davis.  (*Id.*; *see also* Pl's Resp. 56.1 ¶ 153.)  As such, Plaintiff cannot argue that Northwell failed to provide a reasonable avenue for complaint and no reasonable jury "could conclude that [D]efendants failed to provide [Plaintiff] with a reasonable avenue of complaint" where they "provided numerous alternative avenues of complaint that [Plaintiff] could, and eventually did, pursue." *Dutch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009).

As to whether Northwell knew or should have known of the harassment, Plaintiff would have to show "that (1) someone had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Id.*  Here, Plaintiff testified that she complained to Davis about Rose's comment.  (Pl's Resp. 56.1 ¶ 153.)  While Defendants themselves assert this fact, (*see* Defs' 56.1 ¶ 153), they confusingly also argue that Plaintiff "admitted that she did not complain to her supervisor about Rose's comment," (Defs' Mem. 17).  The Court will take the fact as admitted from a plain reading of Defendants' 56.1 Statement.  Even so, nowhere does Plaintiff put forth evidence that Defendants' response in light of knowledge of Rose's comment

---

[11] Plaintiff argues that the Employee Handbook is inadmissible, (*see* Pl's Resp. 56.1 ¶ 2.), but that assertion is squarely contradicted by caselaw.  *See, e.g.*, *Johnson v. Salt Lake Sch. Dist.*, No. 19-CV-743, 2021 WL 4895241, at *5 (D. Utah Oct. 20, 2021) (finding administrative procedures, as included in an employee handbook, admissible under Rule 803(6)); *Rodriguez v. Magic Burgers, LLC*, No. 19-CV-1656, 2021 WL 12303267, at *4 (M.D. Fla. Aug. 18, 2021) ("The Court sees no reason that the Employee Handbook cannot be presented in a form that would be admissible at trial . . . [t]herefore, the Employee Handbook will not be excluded from summary judgment consideration."); *Dixon v. Int'l Fed. of Accountants*, No. 09-CV-2839, 2010 WL 1424007, at *1 n.3 (S.D.N.Y. Apr. 9, 2010) (holding that defendant's employee handbook qualifies as a business record under Federal Rule of Evidence 803(6)).

was unreasonable. Plaintiff has neither provided nor points to evidence that Northwell failed to

act on any such complaint by her about Rose. (*See* Pl's Opp. 19 (stating, with no citation to the

record, that "Northwell similarly knew or had reason to know about the harassment and failed to

take action to remediate the same."); *see generally* Pl's Resp. 56.1 & Defs' Resp. 56.1 (Plaintiff

neither specifically asserts as an undisputed fact nor as a denial that Northwell failed to take

action to act on her complaint about Rose's comment).) Plaintiff testified that Rose was

reprimanded in the past for comments to others and that he was not reprimanded for his comment

to Plaintiff. (Pl's Dep. Tr. at 87:4–24, 97:10–25.) Plaintiff's testimony that Northwell did

nothing is not enough to carry her burden. Her testimony is inadmissible because it is not made

on personal knowledge as to Northwell's alleged failure to reprimand and relays only what Rose

told her, which is textbook hearsay. *See* Fed R. Evid. 602 ("A witness may testify to a matter

only if evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter."); Fed. R. Evid. 801(c) (providing that hearsay is a statement that a

declarant does not make while testifying and which a party offers to prove the truth of the matter

asserted); *Whethers v. Nassau Health Care Corp.*, 956 F.Supp.2d 364, 379 (E.D.N.Y. 2013) ("A

plaintiff's speculations, generalities, and gut feelings, however, genuine, when they are not

supported by specific facts, do not allow for an inference of discrimination to be drawn."). Even

if Rose's comment, as recounted by Plaintiff, was true and presented in admissible form, it

would fail to carry the day because the fact that Rose had been reprimanded in the past does not,

by itself, demonstrate that he was not reprimanded here or that Northwell failed to act on Rose's

comment. And in the absence of admissible evidence, Plaintiff cannot impute Rose's comment

to Northwell. *Cf. Starzynski v. Stanley Black & Decker, Inc.*, No. 21-3040, 2022 WL 17825920,

at *2 (2d Cir. Dec. 21, 2022) (summary order) (affirming a district court's grant of summary

judgment where plaintiff failed to adduce admissible evidence that her employer knew of harassment and failed to take remedial action); *Ameti ex rel. United States v. Sikorsky Aircraft Corp.*, 289 F. Supp. 3d 350, 369–70 (D. Conn. 2018) (finding that plaintiff had failed to provide admissible evidence indicating that his employer was actually or constructively aware of plaintiff's harassment by another employee).

Accordingly, summary judgment on Plaintiff's Title VII hostile workplace claim is granted as it relates to Rose's comment and allegations of disproportionate workload and denied as it relates to Portoro's comments, concerning which there remains a factual dispute.

### 4. NYSHRL Individual Liability

Finally, Defendants argue that Plaintiff has failed to carry its burden to show Portoro's individual liability under the NYSHRL.  (Defs' Mem. 24–25.)

"The NYSHRL allows for individual liability under two theories:  where the individual defendant is considered an 'employer,' of the plaintiff, or where the individual defendant aided and abetted the unlawful discriminatory acts of others." *Santana v. Mount Vernon City Sch. Dist./Bd. of Educ.*, No. 20-CV-3212, 2021 WL 4523770, at *15 (S.D.N.Y. Sept. 30, 2021) (citing N.Y. Exec. Law §§ 296(1), (6)).  "To state an aiding and abetting claim under [Section] 296(6), a plaintiff must allege that a defendant participated in the discriminatory acts." *Dobney v. Walt Disney Co.*, No. 23-CV-5380, 2024 WL 325336, at *6 (S.D.N.Y. Jan. 29, 2024) (citing *Chau v. Donovan*, 357 F. Supp. 3d 276, 286 (S.D.N.Y. 2019)).

As discussed above, there is a dispute of material fact as to whether Portoro made discriminatory comments against Plaintiff, and whether Portoro made a false complaint that led, at least in part, to Plaintiff's termination. *See supra* Section II.C.1–3.  These disputes go directly to whether Portoro "was personally involved in the discrimination." *Cardwell v. Davis Polk &*

*Wardwell LLP*, No. 19-CV-10256, 2021 WL 4434935, at *24 n.13 (S.D.N.Y. Sept. 23, 2021).

Therefore, the Court denies summary judgment on this claim. *See Ferrando-Dehtiar v.*

*Anesthesia Grp. of Albany, P.C.*, 727 F. Supp. 3d 165, 185–86 (N.D.N.Y. Mar. 29, 2024)

(denying summary judgment on NYSHRL individual liability claims where there was a fact

dispute from which a jury could infer the defendants' individual liability); *Stanley v. Mount Sinai*

*Health Sys., Inc.*, No. 21-CV-4619, 2023 WL 8355393, at *13–14 (S.D.N.Y. Dec. 1, 2023)

(denying summary judgment on a NYSHRL individual liability claim where there was a fact

dispute as to whether an individual defendant's conduct subjected plaintiff to a hostile work

environment); *Stryker v. HSBC Sec. (USA)*, No. 16-CV-9424, 2020 WL 5127461, at *9, 17

(S.D.N.Y. Aug. 31, 2020) (denying summary judgment on a NYSHRL individual liability claim

where there was a fact dispute as to whether an individual defendant's conduct was the true

reason for the adverse action under plaintiff's discrimination and retaliation claims).

### III.  Conclusion

For the reasons set forth above, Defendants' Motion is granted in part and denied in part.

A telephonic status conference is hereby scheduled for April 10, 2025, at 10:30 AM.  The Clerk

of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 35.

SO ORDERED.

Dated:    March 14, 2025
          White Plains, New York

_____
       KENNETH M. KARAS
       United States District Judge